**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

HELENE FRAN BERNSTEIN,

     Plaintiff,

vs.              Case No. 3:09-cv-17-J-34MCR

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

     Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, it is recommended the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further proceedings.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") on July 24, 2006, alleging an inability to work since July 8, 2004. (Tr. 39, 43, 50). The Social Security Administration denied this application initially and on reconsideration. (Tr. 50). Plaintiff then requested and received a

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within fourteen (14) days after service of this document. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

hearing before an Administrative Law Judge ("ALJ"), which was held on April 14, 2008. (Tr. 4-20). The ALJ issued a decision on May 13, 2008 finding Plaintiff was not disabled. (Tr. 50-59). Plaintiff timely requested review of the ALJ's decision and on November 6, 2008, the Appeals Council denied review, making the ALJ's decision the Commissioner's final determination. (Tr. 1-3, 75). Plaintiff timely filed her Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since July 8, 2004, due to reflex sympathetic dystrophy syndrome[2] ("RSD", also known as "CRPS")[3], carpal tunnel syndrome ("CTS"), diabetes, knee pain, and heart problems. (Tr. 39, 43, 50).

### B.   Summary of Evidence Before the ALJ

Plaintiff was born on March 10, 1953, and was 55 years old at the time of the ALJ's decision. (Tr. 37). She is a high school graduate, and completed some college courses. (Tr. 7). Plaintiff's past relevant work experience includes employment as a bookkeeper and a cashier. Id. Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.[4]

---

[2] Reflex Sympathetic Dystrophy Syndrome is a chronic pain syndrome most often resulting from trauma to a single extremity.

[3] The terms "RSD" and "CRPS" are completely synonymous. SSR 03-2p.

[4] Plaintiff's Memorandum in Support of Her Complaint (Doc. 16) primarily focuses on the ALJ's failure to properly evaluate Plaintiff's RSD. Therefore, the Court will primarily focus on the
(continued...)

On July 18, 2004, Plaintiff injured her right hand and wrist after falling down a flight of stairs. (Tr. 215). On both July 20, 2004 and July 27, 2004, Plaintiff presented at Shands Medical Center for treatment. Id. at 167-68. Additionally, Plaintiff sought treatment from Adil Kabeer, M.D. Id. at 215. On August 17, 2004, Dr. Kabeer examined Plaintiff's right wrist and noted tenderness in the anatomical snuff box with moderate edema and deceased range of motion. Id. X-rays evidenced a questionable fracture with possible right wrist scaphoid and hook of Hamate fracture. Id. at 215-16. Dr. Kabeer ordered Plaintiff to stay off work at that time. Id. at 217.

On September 15, 2004, Plaintiff was seen by Roger D. Powell, M.D. for increasing problems with her right hand and wrist. (Tr. 219). Upon examination, Dr. Powell noted weakness and decreased sensation in Plaintiff's fingers. Id. On October 27, 2009, EMG and nerve conduction studies evidenced mild to moderate CTS with conduction blocking Plaintiff's right hand. Id. at 220. Additionally, upon examination, Dr. Powell noted there was a slight color difference and coolness to the contralateral side of Plaintiff's hand. Id. At that time, Dr. Powell noted there was a question of early RSD and prescribed Elavil. Id.

On November 24, 2004, Plaintiff was seen by Dr. Powell for a follow up. (Tr. 221). At that time, Dr. Powell did not see much evidence of RSD and advised Plaintiff

---

⁴(...continued)
medical records regarding the same. Again, RSD is a chronic pain syndrome resulting from trauma to a single extremity. SSR 03-2p. Diagnostic criteria for RSD includes: swelling, changes in skin color and texture, increased sweating, and abnormal hair growth. Id.

she could return to work. Id. However, on January 5, 2005, Dr. Powell reported the symptoms of RSD had gotten worse. Id. at 222. Upon examination it was noted that Plaintiff's hand was cold, but with no significant swelling, brawny edema, shiny skin, or sweat pattern abnormalities. Id. Although she had responded somewhat to the medication, Dr. Powell opined Plaintiff may require stellate ganglion blocks and a CTS release. Id. On March 31, 2005, EMG and nerve conduction studies evidenced moderate CTS with no significant changes from the prior test conducted in October 2004. Id. at 223. However, Dr. Powell noted Plaintiff's complaints of swelling, color change, temperature change, and pain were consistent with signs of RSD. Id.

On May 25, 2006, Plaintiff was seen by Dr. Powell for recurrent pain in her right hand and wrist. (Tr. 225). Dr. Powell noted that Plaintiff suffered from chronic pain involving most of her wrist and fingers, cold intolerance, and difficulty with grasping and pinching. Id. Dr. Powell observed that her skin showed a very slight mottled color. Id. Additionally, there was decreased temperature of Plaintiff's right hand when compared with the left. Id. However, Plaintiff had nearly full range of motion for flexion and extension. Id. Dr. Powell opined Plaintiff suffered from CTS and RSD and noted he was concerned about problems with operating and recommended she be pre-treated with Elavil, Lyrica, and stellate ganglion blocks. Id. at 225.

On June 26, 2006, Dr. Powell informed Plaintiff's insurer that her condition had stabilized, but that she had a "severe limitation of functional capacity" and was "incapable of minimal (sedentary) work" due to her inability to use her right upper

-4-

extremity. (Tr. 333). On July 19, 2007, Dr. Powell provided a report to Plaintiff's insurer, opining she was capable of sitting continuously, standing and walking frequently; but never lifting, carrying, or pushing/pulling any weight with her right upper extremity. Id. at 332, 338. He noted she was able to perform simple grasping with both hands; but could not perform pushing/pulling, fine manipulation, or finger dexterity with her right hand. Id. Dr. Powell again certified that Plaintiff suffered from "severe limitation of functional capacity" and was "incapable of minimal (sedentary) work" due to her inability to use her right upper extremity. Id. at 330.

On November 7, 2006, Wayne Sampson, M.D. examined Plaintiff at the ALJ's request. (Tr. 306-07). Dr. Sampson opined Plaintiff had 5/5 motor strength throughout except her right hand grip was 4/5. Id. at 307. Plaintiff's right hand showed no swelling and a normal temperature in comparison to her left; but revealed pain with movement of the fingers and wrist. Id. Dr. Sampson opined Plaintiff suffered from RSD in her right hand, diabetes, history of bilateral CTS, hypertension, asthma, and mild intermittent and chronic knee pain. Id.

On December 1, 2006, adjudicator Dana Harvey completed a Physical Residual Functional Capacity Assessment and diagnosed Plaintiff with RSD and hypertension. (Tr. 312). Mr. Harvey opined Plaintiff was able to perform a significant range of light work. Id. at 312-19. Additionally, on March 26, 2007, Mary Seay, M.D. completed a Physical Residual Functional Capacity Assessment and found Plaintiff would be capable of performing a range of light work with some postural limitations such as frequent use,

as opposed to unlimited use, of her right hand due to decreased strength and sensation. Id. at 320-37.

### C.     Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at

step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 8, 2004, the alleged onset date.  (Tr. 52).  At step two, the ALJ found Plaintiff suffered from the following severe impairments: CTS in her right hand, angina, asthma, and diabetes mellitus.  Id. at 52-53.  At step three, the ALJ found Plaintiff did not have an impairment, or combination of impairments, that met or equaled any listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 53.

The ALJ further determined Plaintiff, on or prior to her date last insured and through the date of his decision, had the residual functional capacity ("RFC")[5] to perform a full range of sedentary work as defined in the regulation.[6]  (Tr. 53-58).  In reaching this conclusion, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting factors of her alleged symptoms not completely credible.  Id. at 57.

At Plaintiff's hearing, the ALJ utilized the testimony of a vocational expert ("VE").  The ALJ asked the VE to review Plaintiff's past relevant work history.  (Tr. 58-59).  The VE testified that Plaintiff's past work as a bookkeeper was sedentary and skilled.  Id.  In

---

[5]The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations.  20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation.  Id.

[6]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

comparing Plaintiff's RFC with the physical demands of this work, the ALJ found Plaintiff was able to perform it as actually and generally performed in the national economy. Id. at 59. Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act. Id.

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff raises four issues on appeal.[7] First, Plaintiff contends the ALJ failed to address her RSD or follow Social Security Ruling ("SSR") 03-2p, which resulted in error at step two of the sequential evaluation process. (Doc. 16, pp. 10-12). Second, Plaintiff argues the ALJ erroneously rejected the opinion of Plaintiff's treating physician, Roger D. Powell, M.D. Id. at 12-16. Third, Plaintiff contends the ALJ erroneously found Plaintiff not completely credible. Id. at 16. Fourth, Plaintiff argues the ALJ's failure to properly consider Plaintiff's RSD resulted in error at step four of the sequential evaluation process. Id. at 16-17. The Court will address each of these issues.

### A. Whether the ALJ erroneously failed to address Plaintiff's RSD or follow SSR 03-2p.

The pathogenesis of RSD is not entirely understood, and it is not a Listed Impairment under the Regulations. The Social Security Administration has recognized both of these facts and has issued a Ruling, SSR 03-2p, to explain its policies for developing and evaluating disability claims based on RSD. Brooks v. Barnhart, 428 F. Supp. 2d 1189, 1192 (N.D. Ala. 2006). The Ruling states, in relevant part:

---

[7]Plaintiff's Memorandum in Support of Her Complaint lists two issues on appeal. (Doc. 16, p. 1). However, the Court finds four essential arguments are raised.

> Claims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment. Because finding that RSDS/CRPS is a medically determinable impairment requires the presence of chronic pain and one or more clinically documented signs in the affected region, the adjudicator can reliably find that pain is an expected symptom in this disorder. Other symptoms, including such things as extreme sensitivity to touch or pressure, or abnormal sensations of heat or cold, can also be associated with this disorder. Given that a variety of symptoms can be associated with RSDS/CRPS, *once the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.*

SSR 03-2p (emphasis added, citations omitted).

Here, a medically determinable impairment has been established.[8] According to SSR 03-2p, the ALJ must then evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine her ability to do basic work activities. However, the ALJ failed to address Plaintiff's RSD at any step of the sequential evaluation process here.[9] Accordingly, on remand, the ALJ must evaluate Plaintiff's RSD in accordance with SSR 03-2p, including an evaluation of the intensity, persistence, and limiting effects. After appropriate evaluation, the ALJ is directed to make a determination

---

[8] Both Drs. Powell and Sampson, as well as adjudicator Dana Harvey, opined that Plaintiff suffered from RSD. (Tr. 222-23, 307, 312).

[9] The Court agrees with the Commissioner's contention that although the ALJ did not specifically address Plaintiff's RSD, he did recognize many of the medical records addressing the symptoms resulting therefrom. (Doc. 19, pp. 4-10; Tr. 54-38). Additionally, the ALJ mentioned Dr. Powell's diagnosis of RSD. (Tr. 55). However, the Court finds the mere mention of diagnosis and symptoms which may be associated with RSD does not equate to an evaluation of the intensity, persistence, and limiting effects of Plaintiff's RSD. See SSR 03-2p.

regarding the severity of Plaintiff's RSD at step two of the sequential evaluation process.

### B. Whether the ALJ erroneously rejected the opinion of Plaintiff's treating physician.

Plaintiff contends the ALJ erred in failing to accord controlling weight to the opinion of her treating physician, Roger D. Powell, M.D. (Doc. 16, p. 12-16). Specifically, Plaintiff argues, the ALJ failed to consider Dr. Powell's opinions regarding the significant and disabling effects of Plaintiff's RSD. Id. at 13. In rebuttal, the Commissioner contends the ALJ properly discredited Dr. Powell's opinions regarding the effects of Plaintiff's RSD because they were not supported by the evidence of record, including Dr. Powell's own treatment records. (Doc. 19, pp. 13-14).

As stated above, SSR 03-2p sets out the policies for developing and evaluating disability claims based on RSD. Brooks, 428 F. Supp. 2d at 1192. The Ruling recognizes RSD as a chronic pain syndrome that may progress beyond the limb or body area originally involved and which manifests in intense pain that is out of proportion to the precipitating injury. Id.; see also SSR 03-2p. The Ruling also recognizes that the pattern of the symptoms may not be entirely consistent due the "transitory nature of the objective findings and the complicated diagnostic process involved." Id. The Ruling states: "Transient findings are characteristic of RSD/CRPS, and do not affect a finding that a medically determinable impairment is present." Id. For this reason the medical opinions of treating physicians, particularly those with a longitudinal perspective, should

be accorded great deference and weight. Brooks, 428 F. Supp. 2d at 1192. The Ruling states, in relevant part:

> Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to *deference* and *may be entitled to controlling weight. If* we find that a treating source's medical opinion on the issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, *the adjudicator will give it controlling weight.*

SSR 03-2p (emphasis added, citations omitted).

At issue here are the medical source statements completed by Dr. Powell dated June 2006 and July 2007. (Tr. 329, 333). In said statements, Dr. Powell reported that Plaintiff suffered from "severe limitation of functional capacity; incapable of minimal (sedentary) work" due to her inability to use her right upper extremity. Id. at 330, 333. Additionally, Dr. Powell opined Plaintiff was capable of sitting continuously, standing and walking frequently; but not lifting, carrying, or pushing/pulling any weight with her right upper extremity. Id. at 332, 338. He also noted that Plaintiff was able to perform simple grasping with both hands, but could not perform pushing/pulling, fine manipulation, or finger dexterity with her right hand. Id.

According to the ALJ, Dr. Powell's own treatment records and the medical record of evidence do not support a conclusion that Plaintiff is unable to perform sedentary work. (Tr. 58). As for Dr. Powell's own treatment records, the ALJ noted Dr. Powell reported a full range of motion in Plaintiff's right upper extremity on numerous

occasions. (Tr. 58, 220-21, 223, 225). Additionally, the ALJ noted the EMG and nerve conduction studies performed in October 2004 and March 2005 revealed only mild to moderate CTS with normal ulnar and radial nerve studies. (Tr. 58, 220, 223). Further, during Dr. Powell's last examination of Plaintiff in May 2006, he assessed that Plaintiff had nearly full range of motion for flexion and extension. (Tr. 58, 225).

As for the other medical evidence of record, the ALJ noted that Dr. Sampson conducted an examination of Plaintiff and found she had 5/5 motor strength throughout except the right hand grip was 4/5, dexterity of her hands was preserved, and a normal temperature was noted in her right hand when compared with the left. (Tr. 58, 307). Additionally, the ALJ considered and gave great weight to the findings of the state agency consultants who claimed Plaintiff was able to perform a significant range of light work.[10] (Tr. 58, 320-37).

After reviewing the medical evidence of record, the Court finds the ALJ's rejection of Dr. Powell's opinion was likely a result of his failure to adequately evaluate Plaintiff's RSD in accordance with SSR 03-2p. Plaintiff's medical records reflect a consistent progression of RSD with some notes of partial, transient success in treatment

---

[10]"[T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant." SSR 96-6p.

or improvement in symptoms. As the Ruling recognized, such findings are characteristic of RSD and are not substantial evidence of cure or remission. See SSR 03-2p; see also Brooks, 428 F. Supp. 2d at 1192. The ALJ based his decision on these sporadic notes of temporary improvement and three consultative examinations. This reliance was erred. See Brooks, 428 F. Supp. 2d at 1192 (holding that failing to give the opinion of a treating physician controlling weight based on sporadic notes of temporary improvement of RSD symptoms and two consultative examinations resulted in reversible error); see also Hall v. Astrue, 2007 U.S. Dist. LEXIS 95776, at *12 n. 6 (S.D. Ala. Nov. 7 2007) ("Reliance upon a form completed by a disability examiner is clear error which must be corrected on remand."). Accordingly, on remand, while properly considering Plaintiff's diagnoses of RSD, the ALJ must re-evaluate Dr. Powell's opinion and accord it proper weight.

### C. Whether the ALJ erroneously found Plaintiff not credible.

Plaintiff contends the ALJ finding that Plaintiff was not completely credible is *per se* erroneous due to his failure to consider Plaintiff's RSD. (Doc. 16, p. 16). Plaintiff argues that without consideration of her RSD, a finding of "not credible" would be the clear result as the pain alleged would otherwise be inconsistent with her other impairments. Id. In rebuttal, the Commissioner contends the ALJ properly evaluated Plaintiff's statements of pain and had good reasons for finding her allegations of the limiting effects thereof not completely credible. (Doc. 19, pp. 15-17).

In determining whether or not a claimant is disabled, the ALJ must consider all of a claimant's symptoms, and "the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529, 416.929. When a claimant attempts to establish disability through her own testimony of subjective pain symptoms, the ALJ must apply the Eleventh Circuit's three-part pain standard:

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560. Once both prongs of the pain standard are satisfied, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." Id. at 1561. Thus, at this stage the ALJ must consider a claimant's subjective testimony of pain. Id. at 1560.

Properly evaluating subjective complaints of pain is especially essential, and complicated, when the claimant suffers from RSD. Valdora v. Comm'r of Soc. Sec., 2009 U.S. Dist. LEXIS 109523, 2009 WL 4126194 (D.N.J. Nov. 23, 2009). As noted above, "[a] diagnosis of RSDS requires the presence of complaints of persistent, intense pain that results in impaired mobility of the affected region," with the degree of pain often "out of proportion to the severity of the injury." Id. It is the pain, and not the triggering injury, that has the potentially disabling effect. SSR 03-2p. That pain is

"transitory" and can "spontaneously occur[]." Id. Consequently, SSR 03-2p repeatedly reminds reviewing officers to carefully consider "the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 03-2p; see also SSR 96-7p; SSR 96-8p.

In the instant case, the ALJ concluded Plaintiff's allegations of pain were unsupported "in light of the medical record of evidence." (Tr. 56). As a general matter, subjective pain is difficult to prove by objective medical evidence; this is particularly true in RSD cases where a diagnosis necessarily hinges on a plaintiff's subjective symptoms. Hunt v. Astrue, 2009 U.S. Dist. LEXIS 48075, at *18, 2009 WL 1519543, at *6 (C.D. Cal. May 29, 2009). The ALJ is not free to reject Plaintiff's statements about the intensity and persistence of her pain based solely on a lack of objective medical evidence. SSR 96-7p(4). As the medical authorities and SSR 03-2p state, RSD is a disease for which objective findings can be minimal.[11] Thus, the proper evaluation of plaintiff's subjective pain testimony is crucial. Additionally, a conservative degree of

---

[11] See SSR 03-2p; see also Samuel D. Hodge, Jr., Jack E. Hubbard & Katherine Armstrong, Complex Regional Pain Syndrome -- Why the Controversy? A Medical/Legal Overview, 13 Mich. St. U. J. Med. & L. 1, 13 (Winter 2009).

treatment does not warrant discrediting a plaintiff suffering from RSD.[12] Hunt, 2009 U.S. Dist. LEXIS 48075, at *21-24, 2009 WL 1519543, at *7-9.

As amply listed in Section (II)(B) of this Report and Recommendation, Plaintiff has received treatment from various medical professionals on numerous different occasions for her RSD. Therefore, reviewing the record as a whole, the ALJ's conclusion -- that Plaintiff's medical evidence of record provides a basis for discounting her subjective pain testimony -- is not well-founded. Again, the ALJ's rejection of Plaintiff's allegations of pain was likely a result of his failure to adequately evaluate Plaintiff's diagnosis of RSD. Thus, on remand, while properly considering Plaintiff's diagnoses of RSD, the ALJ must re-evaluate Plaintiff's credibility.

> **D. Whether the ALJ's failure to properly consider Plaintiff's RSD resulted in error at step four of the sequential evaluation process.**

To the extent the ALJ on remand changes any portion of his decision regarding the severity of Plaintiff's RSD, the opinion of Dr. Powell, and/or the credibility of Plaintiff, the ALJ must also reconsider Plaintiff's RFC at step four of the sequential evaluation process.

---

[12] A diverse range of treatment options are available for RSD, because many factors may be the root cause of the pain and the disorder itself is not well understood. Hodge, CRPS -- Why the Controversy?, supra at 15. SSR 03-2p explains that the most important treatment for RSD is patient education and activity programs designed to increase limb mobility and promote the use of the affected region.

## IV. CONCLUSION

For the reasons stated herein, the undersigned finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Accordingly, after due consideration, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **REVERSED** the case and **REMANDED** to the ALJ with instructions to: (1) evaluate Plaintiff's RSD in accordance with SSR 03-2p; (2) re-evaluate the opinion of Plaintiff's treating physician, Dr. Powell, and accord it proper weight; (3) re-evaluate Plaintiff's credibility; (4) reconsider Plaintiff's residual functional capacity if the decision changes after the above-mentioned reevaluations; and (5) conduct any other proceedings deemed appropriate.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this 3rd day of February, 2010.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
    United States District Court Judge

Counsel of Record